**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YALE – NEW HAVEN HOSPITAL<br>20 York Street<br>New Haven, CT 06510<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>TOMMY G. THOMPSON, Secretary of the<br>United States Department of Health and<br>Human Services<br>200 Independence Ave., S.W.<br>Washington, D.C., 20201<br><br>　　　　Defendant. | Case No: |

**COMPLAINT**

Plaintiff, Yale – New Haven Hospital ("Yale – New Haven"), by and through its undersigned counsel, states the following by way of complaint against Tommy G. Thompson, Secretary of the Department of Health and Human Services ("the Secretary"):

**NATURE OF THE CASE**

1.   This action arises from the Secretary's failure to reopen certain of Yale - New Haven's cost reports, recalculate its Medicare disproportionate share hospital ("DSH") adjustment, and to make such payments as called for by the recalculation, either directly or through the Secretary's intermediary. These payments are due and owing under the Medicare statute. Yale - New Haven brings this action for mandamus to

compel the Secretary to perform his non-discretionary duty to reopen Yale - New Haven's cost reports in order to recalculate and issue those payments.

## JURISDICTION

2.  This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §1395 et seq. ("the Medicare statute"), and the Administrative Procedure Act, 5 U.S.C. §551 et seq. ("APA"). The United States District Court for the District of Columbia has jurisdiction in this matter pursuant to 28 U.S.C. §1361 because (i) the hospital has exhausted all available remedies related to this issue within the meaning of the statute (by either filing the appropriate requests for reopening and/or appeals or because such remedies are either unavailable as a matter of law or futile) and (ii) the Defendant has a clear, non-discretionary duty to act in this case.

## VENUE

3.  Venue is proper in this district court, pursuant to 28 U.S.C. §1391 and 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1877(f).

## THE PARTIES

4.  Plaintiff, Yale - New Haven Hospital, is a Medicare Provider located 20 York Street, New Haven, Connecticut, and is assigned provider number 07-0010. Yale - New Haven furnishes inpatient and outpatient hospital services to, inter alia, patients entitled to benefits under the Medicare program.

5.  Defendant, Tommy G. Thompson, is the Secretary ("the Secretary") of the United States Department of Health and Human Services ("HHS") with offices in

Washington D.C. HHS is the federal department which contains the Centers for Medicare & Medicaid Services ("CMS"), the agency within HHS that is responsible for the administration of the Medicare program.

## FACTS

### A. Background Facts: Medicare Reimbursement In General

6. Congress enacted the Medicare program (Title XVIII of the Social Security Act) in 1965. As originally enacted, Medicare was a health insurance program that furnished health benefits to participating individuals once they reached the age of 65.

7. Among the benefits provided under Medicare are hospital services. For cost reporting years beginning before October 1, 1983, the Medicare program reimbursed hospital services on a "reasonable cost" basis. 42 U.S.C. § 1395f(b).

8. In 1983, Medicare began reimbursing hospitals using the prospective payments system ("PPS"). 42 U.S.C. § 1395www(d). Under PPS, hospitals are paid a fixed amount for each of approximately 490 diagnosis-related groups ("DRGs"), subject to certain payment adjustments.

9. The Secretary (or one or more of his predecessors, hereinafter collectively referred to simply as "the Secretary") has delegated much of the responsibility for administering the Medicare Program to CMS (formerly known as the Health Care Financing Administration or "HCFA").

10. The Secretary, through CMS, contracted out many of Medicare's audit and payment functions to entities known as fiscal intermediaries.

11. In order for a hospital to obtain Medicare reimbursement, it must, at the close of each fiscal year, submit to its intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare. 42 C.F.R. §§ 413.20(b), 413.24(f).

12. The intermediary then audits the cost report and informs the hospital of its final determination of the amount of Medicare reimbursement through a notice of program reimbursement ("NPR"). 42 C.F.R. § 405.1803.

13. A provider dissatisfied with its intermediary's determination may file an appeal with the Provider Reimbursement Review Board ("PRRB" or "Board") within 180 days of the date of the determination. 42 U.S.C. § 1395oo(a).

14. Alternatively, a dissatisfied provider may request that the intermediary reopen and revise a settled cost report within three years of the date that the determination was issued. 42 C.F.R. § 405.1885(a). Jurisdiction for reopening a decision under 42 C.F.R. §405.1885(a) rests exclusively with the administrative body that rendered the last determination or decision. 42 C.F.R. § 405.1885(c).

15. The regulations adopted by the Secretary also require an intermediary's determination to be reopened under 42 C.F.R. § 405.1885(b) if, within the three-year period in which reopenings are permitted, CMS notifies the intermediary that the initial determination or settlement was inconsistent with applicable law. The version of 42 C.F.R. §405.1885(b) in effect at all relevant times referenced in this complaint stated that an intermediary's decision "shall be reopened and revised by the intermediary if, within the aforementioned 3-year period, the Centers for Medicare & Medicaid Services notifies the intermediary that such determination or decision is inconsistent with the applicable

law, regulations, or general instructions issued by the Centers for Medicare & Medicaid Services. . . " See 67 Fed. Reg. 50096 (August 1, 2002).[1]

### B.  DSH Adjustments

16. A hospital that serves a disproportionate share of low-income patients, like Yale - New Haven, is eligible for an upward adjustment to its Medicare PPS payments.

17. The Secretary has delegated to CMS the authority to calculate and administer DSH adjustments as part of the PPS reimbursement system.  CMS, in turn, delegates the responsibility to the fiscal intermediaries who notify hospitals of their DSH adjustments in their NPRs.

18. The intermediaries calculate the DSH adjustment by adding two fractions known colloquially as the Medicare Proxy and the Medicaid Proxy.

19. The Medicaid proxy includes, among other things, the number of "patient days" for patients who were eligible for Medicaid during the cost report period:

> [a] fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX (the Medicaid Program), but who were not entitled to benefits under Part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

---

[1] All citations to 42 C.F.R. § 405.1885(b) in this complaint, unless otherwise noted, refer to the version of the regulation that was in effect prior to August 1, 2002 and which applies to the claims in this complaint.  The Secretary promulgated an amended regulation because the Circuit Court of Appeals for the District of Columbia directed the Secretary to make additional DSH payments to the hospital plaintiffs in Monmouth Medical Center v. Thompson, 257 F.3d 807 (D.C. Cir. 2001).  See 67 Fed. Reg. 50096.

20. A larger number of Medicaid eligible days means a larger DSH adjustment for the Hospital.

21. On May 6, 1986, the Secretary issued an interim final regulation to implement the statutory disproportionate share add-on payment (42 C.F.R. § 412.106). See 51 Fed. Reg. 16,772, 16,777 (May 6,1986); 51 Fed. Reg. 31,454, 31,460 (Sept. 3, 1986).

22. At or about the same time, the Secretary also issued an interpretation of the rule which interpreted eligible Medicaid days to mean "only those days for which benefits are payable." 51 Fed. Reg. at 16,777/2-3.

23. This interpretation had the effect of reducing payments by limiting adjustments based upon patients who were "eligible" for Medicaid benefits under the natural reading of the word, but who, because of a particular state's program, were not receiving such benefits on a given day. Therefore, for purposes of calculating the disproportionate share percentage, the Secretary limited Medicaid covered days to those days for which benefits were actually paid under Title XIX as opposed to all Medicaid eligible days. See 51 Fed. Reg. 16,777; see also 51 Fed. Reg. 31,460-61.

24. Beginning in 1996, the Secretary's limiting interpretation of the Medicare statute's disproportionate share provisions, set forth in former 42 C.F.R. § 412.106, was held invalid by four circuit courts of appeals and at least one district court. See Cabell Huntington Hosp., Inc. v. Shalala, 101 F.3d 984 (4th Cir. 1996); Deaconess Health Srvs. Corp. v. Shalala, 83 F.3d 1041 (8th Cir. 1996); Legacy Emanuel Hosp. and Health Ctr. v. Shalala, 97 F.3d 1261 (9th Cir. 1996); Jewish Hosp., Inc. v. Secretary of Health and

Human Srvs., 19 F.3d 270 (6th Cir. 1994); Incarnate Word Health Srvs. Fort Worth Healthcare Corp. v. Shalala, CIV 3:95-851-R (N.D. Tex. July 25, 1997).

25.  In direct response to the foregoing court decisions, the Secretary, on February 27, 1997, issued a letter ruling which essentially admitted that the Secretary, HCFA, and the fiscal intermediaries had been violating the Medicare statute by failing to include eligible but unpaid Medicaid days in the DSH calculation, resulting in underpayments to disproportionate share hospitals.  See HCFA Ruling 97-2.

### C.  HCFA Ruling 97-2

26.  The purpose of HCFA Ruling 97-2 ("Ruling 97-2") was to correct, prospectively, the legal error regarding the exclusion of eligible but unpaid Medicaid days in the DSH calculation:

> In order to ensure national uniformity in calculation of DSH adjustments, HCFA has determined that, on a prospective basis, HCFA will count in the Medicaid fraction the number of days of inpatient hospital services for patients eligible for Medicaid on that day, whether or not the hospital received payment for those inpatient hospital services.

See Ruling 97-2, at 2.

27.  As part of its prospective application, Ruling 97-2 allowed hospitals with open cost reports and those with pending appeals to include eligible but unpaid days in their DSH calculation.

28.  Ruling 97-2, however, prohibited the reopening ("the reopening prohibition") of cost reports that were already settled at the time the Ruling was issued:

> We will not reopen settled cost reports based on this issue.  For hospital cost reports that are settled by fiscal intermediaries on or after the effective date of this ruling, these days may be included.  For hospital cost reports which have been settled prior to the effective date of this ruling, but for which the

>hospital has a jurisdictionally proper appeal pending on this issue pursuant to either 42 CFR 405.1811 or 42 CFR 405.1835, these days may be included for purposes of resolving this appeal.

See Ruling 97-2, at 2.

29. Apart from the reopening prohibition, Ruling 97-2 correctly read the Medicare statute as requiring the intermediary to reimburse hospitals for additional amounts due because of eligible but unpaid Medicaid days. In utter contravention of this aspect of Ruling 97-2, the intermediary, acting on behalf of the Secretary, failed to reopen Yale - New Haven's settled cost reports for NPRs and/or amended or revised NPRs issued prior to February 27, 1997 and/or at times thereafter in order to recalculate the DSH percentage to include eligible but unpaid Medicaid days.

30. The exclusion of these days from Yale - New Haven's DSH calculation unlawfully reduced Yale - New Haven's Medicare DSH patient percentages for cost reports settled during the three year period prior to February 27, 1997 and/or at times thereafter, including but not limited to those enumerated below.

31. On September 30, 1994, the intermediary issued an NPR to plaintiff for its cost report for fiscal year 1992. The intermediary, however, never revised or amended its determinations so as to include eligible but unpaid days in plaintiff's DSH calculation. As a result, the intermediary under-reimbursed the plaintiff for that year by approximately $700,000.00.

32. On September 28, 1995, the intermediary issued an NPR to plaintiff for its cost report for fiscal year 1993. The intermediary, however, never revised or amended its determination so as to include eligible but unpaid days in plaintiff's DSH calculation. As

a result, the intermediary under-reimbursed the plaintiff for that year by approximately $750,000.00.

33. On July 11, 1996, the intermediary issued an NPR to plaintiff for its cost report for fiscal year 1994. The intermediary, however, never revised or amended its determination so as to include eligible but unpaid days in plaintiff's DSH calculation. As a result, the intermediary under-reimbursed the plaintiff for that year by approximately $650,000.00.

34. On September 30, 1997, the intermediary issued an NPR to plaintiff for its cost report for fiscal year 1995. The intermediary never revised or amended its determination so as to include eligible but unpaid days in plaintiff's DSH calculation. As a result, the intermediary under-reimbursed the plaintiff for that year by approximately $700,000.00.

## COUNT I

35. Yale - New Haven incorporates by reference paragraphs 1-34 herein.

36. The Secretary's prohibition on reopening in Ruling 97-2 is invalid and a nullity because it violates the Secretary's and/or the intermediary's affirmative, non-discretionary duty, pursuant to 42 C.F.R. § 405.1885(b), to reopen and revise NPRs once HCFA or CMS announces a finding that there is an inconsistency between the prior interpretation of the DSH formula and the text of the Medicare statute.

37. HCFA, when it issued Ruling 97-2, announced a finding that there was an inconsistency between the Secretary's earlier interpretation—the "paid days" policy that had excluded certain Medicaid eligible days from the DSH calculation—and the actual text and intent of the Medicare statute to include all eligible days, irrespective of whether

they were paid days. In Ruling 97-2, the Secretary and HCFA essentially conceded that the paid days policy was "contrary to the applicable law in four judicial circuits" and acquiesced in those decisions on a national basis.

38. By its terms, Ruling 97-2 is binding on "all HCFA components, Medicare contractors, the Provider Reimbursement Review Board, the Medicare Geographic Classification Review Board, the Departmental Appeals Board, and administrative law judges who hear Medicare appeals."

39. As a result of Ruling 97-2, the intermediary, pursuant to 42 C.F.R. §405.1885(b), had an affirmative, non-discretionary duty to (i) reopen and revise all determinations and hearing decisions, including but not limited to all NPRs and all amended and/or revised NPRs, irrespective of whether plaintiff requested reopening, (ii) include eligible but unpaid days in plaintiff's DSH calculation for those time periods, and (iii) thereafter issue payment for plaintiff's increased DSH adjustment for each of the affected years. In addition, the intermediary had an affirmative, non-discretionary duty to grant all reopening requests, irrespective of whether those reopening requests specifically sought reimbursement for eligible but unpaid days, so that the intermediary could include eligible but unpaid days in plaintiff's DSH calculation and thereafter issue payment for plaintiff's increased DSH adjustment for those years. See 42 C.F.R. § 405.1885(b). According to the version of the regulation that was in effect at the time: "A determination or a hearing decision rendered by the intermediary shall be reopened and revised by the intermediary if, within the aforementioned 3-year period, the Centers for Medicare & Medicaid Services notifies the intermediary that such determination or decision is

inconsistent with the applicable law, regulations, or general instructions issued by the Centers for Medicare & Medicaid Services . . . ." Id.

40. In two cases, Monmouth Medical Center v. Thompson, 257 F.3d 807 (D.C. Cir. 2001) and Bartlett Memorial Medical Center, Inc. v. Shalala, 171 F. Supp. 2d (W.D. Okla. 2001), courts have ruled that the Secretary's reopening prohibition contained in Ruling 97-2 (refusing to allow fiscal intermediaries to reopen settled cost reports and revise improper DSH calculations) was invalid and in violation of 42 C.F.R. § 405.1885(b). In those cases, the courts held that the hospitals were entitled to writs of mandamus requiring the Secretary to order the intermediaries to reopen the cost report determinations and re-compute the DSH calculation.[2]

41. In Monmouth, the court recognized that 42 C.F.R. § 405.1855(b) created a clear, non-discretionary duty that any request to a fiscal intermediary, or appeal to the PRRB, to reopen these determinations would have been futile.

42. As set forth above, the intermediary issued NPRs and/or revised or amended NPRs to Yale - New Haven, prior to February 27, 1997, and/or at times thereafter, which violated the Medicare statute by excluding eligible but unpaid Medicaid days from Yale - New Haven's DSH calculation. The Secretary's intermediary under-reimbursed Yale - New Haven for those years.

---

[2] The Secretary took exception to this Court's decision, claiming that it ran afoul of the Department's "well-settled interpretation of § 405.1885(b)." 67 Fed. Reg. 50096 (August 1, 2002). In an attempt to draft around his loss in the Monmouth case for cases arising from NPRs issued after August 1, 2002, the Secretary changed the wording of its regulation as follows: "An intermediary determination . . . . must be reopened and revised if, within the 3-year period specified in paragraph (a) of this section, CMS . . . provides notice to the intermediary that the intermediary determination . . . . is inconsistent with the applicable law . . . . [and] *explicitly directs* the intermediary to reopen and revise the intermediary determination or the intermediary hearing decision; . . ." 42 C.F.R § 405.1885 (emphasis added).

43. Neither the Secretary nor the intermediary ever reopened Yale - New Haven's cost reports and revised Yale - New Haven's NPRs and/or revised or amended NPRs to reimburse Yale - New Haven as required by the Medicare statute.

44. As the courts have consistently agreed, the Medicare statute requires that all Medicaid eligible days, not just those that are Medicaid-paid, must be counted as Medicaid days for purposes of the DSH calculation. The Secretary's reopening prohibition is inconsistent with the Medicare statute and is invalid with respect to all time periods in which it was applied.

**WHEREFORE**, plaintiff Yale - New Haven requests that the Court enter an Order and issue a writ of mandamus:

(i) directing the Secretary and/or its intermediary to reopen Yale - New Haven's cost reports covering the time periods referenced in Yale - New Haven's complaint and to pay Yale - New Haven the additional amounts determined through the reopening process, together with an award of both pre-judgment and post-judgment interest on the additional amounts determined throughout the reopening process;

(ii) stating that this Court retains jurisdiction in this matter until the Secretary and/or the intermediary have completed the reopening process, up to and including issuing revised NPRs where applicable;

(iii) requiring the Secretary to submit for the Court's prior approval any further instructions provided to the intermediary with regard to implementing this Court's ruling;

(iv) awarding Yale - New Haven attorney's fees and costs, as permitted by law; and

(v) awarding such other monetary and equitable relief as this Court deems just and appropriate or is necessary to effectuate any aspect of the Court's award.

                        Jacqueline E. Bennett
                        DC Bar #474355
                        **REED SMITH LLP**
                        1301 K Street, N.W.
                        Suite 1100 – East Tower
                        Washington, DC  20005
                        (202) 414-9200
                        (202) 414-9299 Facsimile
                        JBennett@ReedSmith.com

                        Attorneys for the Plaintiff Yale – New Haven Hospital

                        Of Counsel:

                        Murray J. Klein
                        **REED SMITH LLP**
                        Princeton Forrestal Village
                        136 Main Street, Suite 250
                        Princeton, NJ  08540
                        (609) 987-0050

Dated:  February 24, 2003